UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

D.A.C. (XXX-XX-3524)  CIVIL ACTION NO. 18-cv-0643

VERSUS  MAGISTRATE JUDGE HORNSBY

US COMMISSIONER SOCIAL SECURITY
ADMINISTRATION

**MEMORANDUM RULING**

**Introduction**

D.A.C. ("Plaintiff") was born in 1974, earned a GED, and worked for several years as a truck driver. He stopped working in November 2014 because of health problems, and he applied for disability benefits. ALJ Charlotte Wright held an evidentiary hearing and issued a written decision in which she found that Plaintiff was not disabled within the meaning of the regulations. The Appeals Council denied a request for review, which made the ALJ's opinion the Commissioner's final decision.

Plaintiff filed this civil action to seek the limited judicial relief that is available under 42 USC § 405(g). The parties filed written consent to have a magistrate judge decide the case, and it was referred to the undersigned pursuant to 28 USC § 636(c). For the reasons that follow, the Commissioner's decision is reversed and the case is remanded to the agency for further proceedings.

**Summary of the ALJ's Decision**

The ALJ analyzed Plaintiff's claim under the five-step sequential analysis established in the regulations. See Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).

She found at step one that Plaintiff had not engaged in substantial gainful activity since his November 15, 2014 application date. At step two, she found that Plaintiff had degenerative disc disease and a history of bipolar disorder, which rose to the level of severe impairments. But she did not find that the impairments met or medically equaled a listed impairment at step three.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, except he could only occasionally reach overhead to the left or right. The ALJ also found that Plaintiff was "limited to the performance of simple, routine tasks but not at a production rate pace."

A vocational expert ("VE") offered testimony relevant to steps four and five. The ALJ found that Plaintiff's RFC prevented him from performing his past relevant work as a truck driver or track layer. The VE identified representative occupations warehouse checker, router dispatcher, and power screwdriver operator, which are classified as light work, that a person with Plaintiff's RFC and other factors could perform. The ALJ accepted that testimony and found at step five that Plaintiff was not disabled because he was capable of performing the demands of those jobs.

**Issues on Appeal**

Plaintiff's brief identifies two issues for appeal:

1. The ALJ's RFC determination is not supported by substantial evidence because she did not appropriately analyze the competing opinion evidence.

2. The ALJ erred by failing to specifically consider Plaintiff's strong work history in her credibility assessment.

**Standard of Review; Substantial Evidence**

This court's review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard. Perez, 415 F.3d at 461. "Substantial evidence is more than a scintilla and less than a preponderance." Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Relevant Evidence**

**A. Hearing Testimony**

Plaintiff testified at a hearing in May 2016. He was accompanied by a non-attorney representative. Plaintiff testified that he was 41 years old, divorced with two adult children, and lived alone. He earned a GED and went to a Vo-tech school for 18 months to study auto collision repair, but his work was as a truck driver until it ended in November 2014. Plaintiff testified that "because of some of this dizziness and everything, I had to stop driving." He said he also experienced forgetfulness that was getting worse, as well as digestive issues (diarrhea or constipation) because of allergies. He said he still owned an automobile but had stopped driving about 90 days earlier after his dizziness caused him to run a red light and, on another occasion, almost cause an accident.

Plaintiff said that he had not received any in-patient mental health treatment, but he was seeing a psychiatrist, Dr. Jaeckle, about once a month. He also started seeing counselor Tom Moore once a month beginning in March 2015.

Plaintiff testified that his attention span "seems to be very short compared to several years ago" when he could focus on or comprehend something. His though process is not clear enough to make logical decisions, and he does not go out in public anymore because of trouble relating to other people. He said he gets agitated very easily because of loud noises or the like. He is able to cook and do some light housekeeping, but he does not engage in any social or recreational activities.

**B. Medical Evidence**

Plaintiff saw Dr. Jason Broussard for a psychiatric evaluation in June 2014. Plaintiff reported that his father and grandfather were diagnosed with bipolar disorder, and he had been admitted to Brentwood Hospital as a teenager for the same diagnosis. He complained of symptoms of depression, with not much success of late with medication. He said he was unable to go in public because he becomes agitated and quickly escalates. His medications were Seroquel, Trazodone, and Klonopin. Plaintiff was encouraged to stay compliant with his medications, and Dr. Broussard also prescribed Trileptal for mood stabilization. Tr. 272-73. Plaintiff reported in August 2014 that he was feeling much better since starting Trileptal, and it had allowed him to start working again as a truck driver. Tr. 290. But by December 2014, he was not doing as well and not working. Tr. 285. Plaintiff reported in January 2015 that he had an allergic reaction to Trileptal and had not been taking it. Tr. 280.

S&S Psychiatry in Arkansas, where Plaintiff formerly lived, evaluated him in February 2015. A note in March 2015 indicated that Plaintiff was having side effects with one of his medications, Abilify, and his mother felt like he needed hospitalization due to cycling moods. At two visits in May 2015, Plaintiff had loud or pressured speech, showed poor or suspect judgment and insight. At one visit his affect was flat, and at the other he was angry and agitated. Tr. 308-18.

Police brought Plaintiff to a Shreveport emergency room in May 2015 after his mother called them because of a manic episode. Plaintiff reported having trouble with chills and fever and being on an emotional roller coaster. He was discharged to home. Tr. 301-03.

Plaintiff reported in June 2015 that he had become profoundly depressed over Thanksgiving and Christmas and contemplated suicide, but then Prozac made him manic with nonstop talking for three days. He sometimes heard voices. The physician reported that Plaintiff had seen several other practitioners and been treated with several different medications yet does not seem to have been well compensated. Plaintiff and his mother said that his mood was best stabilized when he was taking Lithium. Tr. 397.

Plaintiff wrote in his disability report that one of his health care providers was Tom Moore at Shreveport Family Counseling Services. Tr. 193. Mr. Moore completed assessment forms in March and April 2016, shortly before the May 2016 hearing. He wrote that Plaintiff had diagnoses of bipolar disorder, major depressive disorder with anxious distress. He said the prognosis was poor. Mr. Moore assigned extreme limitations (meaning unable to sustain consistently and effectively for more than four hours per work

day) regarding the abilities to remember work-like procedures, maintain attention for extended periods of two-hour segments, sustain an ordinary routine without special supervision, complete a normal work day and work week without interruptions from psychological symptoms, and be aware of normal hazards and take appropriate precautions. He found marked limitation (meaning unable to sustain the activity consistently and effectively from two to four hours during an eight hour work day) in categories including understand and remember very short and simple instructions, carry out very short and simple instructions, maintain regular attendance and punctuality, and make simple work-related decisions.

The form asked for an explanation of limitations of those degrees. Mr. Moore wrote: "By the client's report -- chronic physical symptoms (pain, dizziness, lack of energy, etc.) has eroded the client's self-confidence and hopefulness in life producing depressive features that impair functioning." He estimated that Plaintiff would be "off task" 25% of the time during a typical work day that involved even simple work tasks. He opined that the conditions described had existed since November 2014. Tr. 467-72.

Counselor Moore also provided a therapeutic report in November 2016, after the hearing. He wrote that he had seen Plaintiff monthly between April 2015 and November 2016, for a total of 16 sessions. He wrote that Plaintiff had reported feelings of loss and hopelessness resulting from divorce, emotional distance from his child, frustration related to employment, and chronic health problems. He had successfully relocated his place of residence to his mother's house. Moore said that move had "led to a significant increase in his daily level of social interaction, (but) Anthony is still working to develop significant

relationships with peers outside the family unit." Plaintiff's physical symptoms seemed to continue to hinder him in finding and maintaining gainful employment. Recurring bouts of dizziness had made the operation of a truck unsafe. Moore wrote that Plaintiff's move to his mother's house had "made a meaningful impact on his previous isolation, resulting in an improvement in his mental health. His dependence on his mother, however, was a source of frustration that could be resolved only if he developed an independent source of income that allowed an independent residence. Tr. 540-42.

Soon after the hearing, in June 2016, the agency referred Plaintiff to Thomas E. Staats, Ph.D., a clinical neuropsychologist, for a consultative examination. Dr. Staats offered diagnoses of moderate bipolar disorder without psychotic features, social anxiety disorder with panic attack specifier, moderate somatic symptom disorder with predominant persistent pain, and psychological factors affecting other medical conditions (vertigo, nausea, and tinnitus). Tr. 532.

Dr. Staats completed an assessment form that asked him to describe the level of restriction for various activities on a scale that included mild, moderate, marked, and extreme. Marked was defined as a serious limitation in the area, and there is a substantial loss in the ability to effectively function. Dr. Staats found marked limitations in Plaintiff's ability to interact appropriately with the public, supervisors, or coworkers, and to respond appropriately to usual work situations and changes in a routine work setting. He explained that he based these limitations on poorly controlled bipolar disorder with breakthrough rapid cycling mood swings. Plaintiff had described suffering an average of three breakthrough panic attacks per week when in the presence of crowds out in public. The

form asked Dr. Staats to identify the factors that supported his assessment. He listed observation, self-report, and review of records. Tr. 528-36.

A state agency consultant did not examine Plaintiff but did review his medical records before issuing findings in August 2015, which was *before* Dr. Staats or Counselor Moore issued their reports. The agency consultant found that Plaintiff was moderately limited in the ability to carry out detailed instructions and in the ability to complete a normal work day and work week without interruptions from psychological symptoms, but not significantly limited in the ability to carry out very short and simple instructions, remember work-like procedures, work in coordination with or in proximity to others without being distracted by them, and maintain socially appropriate behavior. Tr. 118-20.

**Analysis**

Plaintiff argues that the ALJ placed too much emphasis on the opinion of the non-examining agency consultant without good reasons to discount the opinions of Dr. Staats and Counselor Moore. The opinions of treating or examining sources are generally given more weight, but they can be given less weight with a proper explanation. Kneeland v. Berryhill, 850 F.3d 749, 760 (5th Cir. 2017). "[A]lthough the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir.1987). And an ALJ is entitled to afford great weight to the opinions of state agency consultative examiners where they are supported by the evidence. The consultants are considered experts in the

social security disability program, and their opinions are valuable. Brooks v. Commissioner, 2016 WL 6436791, *10 (W.D. La. 2016).

Determining a claimant's RFC is the ALJ's responsibility. Ripley v. Chater, 67 F.3d 552, 557 (5th Cir.1995). "The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." Gonzales v. Astrue, 231 Fed. Appx. 322, 324 (5th Cir. 2007). This includes the authority "to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990), quoting Scott v. Heckler, 770 F.2d 482, 485 (5th Cir.1985).

The ALJ noted Counselor Moore's opinion that Plaintiff had marked to extreme limitations in matters such as sustaining and ordinary routine without special supervision and making simple work-related decisions. The ALJ afforded Moore's opinion "no weight" for three assigned reasons. First, the ALJ said, it contradicted Moore's letter that stated Plaintiff had made significant improvement in social functioning since living with his mother. This is an overstatement of the contents of that letter when it is read in its entirety. Second, Moore did not submit mental status examinations that support the findings. Other parts of the record, however, contain evidence that Plaintiff was seen and treated on multiple occasions for serious mental health problems. Third, Plaintiff's other counselors reported improvement in symptoms with Lithium without severe side effects. There were some indications that Lithium helped or was the most effective of the multiple

drugs, but there is no significant indication in the records that an administration of Lithium has led to any long-term resolution of Plaintiff's mental health limitations.[1]

The ALJ also assigned "no weight" to the opinion of consultative examiner Dr. Staats, which included Staats' findings that Plaintiff would have moderate difficulty with complex instructions and tasks and was likely to show problematic behaviors in a work setting. The no weight assignment was made because "it appears largely based on the subjective complaints of the claimant." There was not extensive psychiatric treatment, variable compliance when treated, and the evaluation was a one-time exam.

The criticisms of the consultative examination are inherent in the nature of the one-time examinations the agency routinely sends claimants to and sometimes relies upon to justify a decision. There is arguably a lack of extensive psychiatric treatment evidence in the record, but there is certainly evidence that Plaintiff suffered from serious mental health problems that were not satisfactorily resolved despite several attempts by physicians to prescribe various medications. The one-time nature of the visit may be a valid reason to discount a consultative examiner's opinion in favor of an opinion from a treating medical

---

[1] At the time of the ALJ's decision, the regulations provided that only acceptable medical sources, such as physicians, could establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. Other sources, such as counselors, could be used to support findings of the severity of an impairment and its effect on the ability to work. Young v. Berryhill, 689 Fed. Appx. 819, 822 (5th Cir. 2017); SSR 06-03p (rescinded). Young added: "Although an ALJ may assign little weight to an 'acceptable medical source' only upon a showing of good cause, we have not imposed a good cause requirement to discount medical opinions from 'other sources.'" Id. at 822. Plaintiff in this case does not rely on Counselor Moore to establish the existence of an impairment, but only to prove the extent of the limitations flowing from that impairment and how they affect his ability to work.

source, but it is not persuasive as grounds to afford no weight to the consultative examiner's opinion and, instead, embrace the opinion of a consultant who never saw the patient or even the reports of providers who did examine the claimant.

The state agency mental consultant, who did not have the benefit of the reports from Dr. Staats or Counselor Moore, found much less serious limitations. The ALJ afforded his assessment "great weight, as the claimant is able to perform his activities of daily living with minimal interference, and he reports a positive response in symptoms with medication and structure." Again, this appears to be a significant overstatement of the temporary benefits of certain medication or Plaintiff moving in with his mother.

The undersigned ordinarily affords great deference to how an ALJ elects to weigh competing opinions. In this case, however, the opinion of a counselor with a long-term relationship with the patient and the opinion of an examining consultant (who is a specialist in the field), both of which are fairly consistent with each other and the medical record, were completely dismissed in favor of an opinion from a non-examining consultant, who did not even see the other reports. The ALJ assigned reasons for the weight that she assigned the various opinions, but, as explained above, those reasons do not hold up to a fair review made in comparison to the record.

The undersigned finds that, in these fairly unusual circumstances, the ALJ's assessments, and therefore her RFC, are not supported by substantial evidence. Two examining sources suggest workplace limitations significantly beyond the ALJ's limitation to simple, routine tasks but not a production rate pace. For example, there is strong evidence that Plaintiff would have limitations on his ability to stay on task; interact with

coworkers, supervisors, or members of the public; and respond appropriately to usual work situations and changes in a routine work setting. None of those limitations were included in the RFC and are likely to have impacted the jobs available to the claimant.

It is not the court's role to make a finding as to the appropriate RFC. The court may only hold that the current RFC, as explained in the decision, is not supported by substantial evidence. The appropriate remedy is to reverse the decision of the Commissioner and remand the case for further proceedings. Those proceedings may include the receipt of additional evidence or additional explanation of the agency's interpretation and weighing of the evidence already gathered. That later decision will have to stand on its own merits. This one, however, must be reversed. Accordingly, the Commissioner's decision to deny benefits is reversed pursuant to Sentence four of 42 U.S.C. § 405(g), and this case is remanded to the agency for further proceedings.

THUS DONE AND SIGNED in Shreveport, Louisiana, this the 1st day of May, 2019.

_____
Mark L. Hornsby
U.S. Magistrate Judge